

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| (1) INTERGRAPH HARDWARE TECHNOLOGIES COMPANY, § § | | |
| Plaintiff, § § | | 2-02CV-312 |
| VS. § § | CIVIL ACTION. NO._____ | TJW |
| (1) DELL COMPUTER CORPORATION, § (2) HEWLETT-PACKARD COMPANY, and § (3) GATEWAY, INC. § Defendants. § | | |

## COMPLAINT FOR PATENT INFRINGEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Intergraph Hardware Technologies Company ("Intergraph"), as and for its Complaint herein, states as follows:

### INTRODUCTION

This is an action against Dell Computer Corporation ("Dell"), Hewlett-Packard Company, ("HP"), and Gateway, Inc. ("Gateway") for patent infringement under the Patent Laws of the United States, 35 U.S.C. §§ 101 et seq., for infringing U.S. Patent No. 4,899,275 entitled "Cache-MMU System" ("'275"); U.S. Patent No. 4,933,835 entitled "Apparatus for Maintaining Consistency of a Cache Memory with a Primary Memory" ("'835"); and U.S. Patent No. 5,091,846 entitled "Cache Providing Caching/Non-Caching Write-Through and Copyback Modes for Virtual Addresses and Including Bus Snooping to Maintain Coherency" ("'846") (collectively, the "Patents In Suit") owned

LON:119703.1
36485.5

by Intergraph which disclose and claim computer systems having improved cache memory management systems, and related methods.

## PARTIES AND JURISDICTION

1.  Plaintiff Intergraph is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Intergraph is a wholly-owned subsidiary of Intergraph Corporation ("Intergraph Corp."), a Delaware corporation with its principal place of business in Huntsville, Alabama. Intergraph is the assignee of the Patents In Suit and holds the right to recover damages for past, present and future infringement of the Patents In Suit and the right to seek injunctive relief for infringement of the Patents In Suit.

2.  Defendant Dell is a Delaware corporation with its principal place of business in Round Rock, Texas. Dell is engaged in the business of making, using, selling and offering to sell computer systems. Upon information and belief, Dell employs sales representatives in the Eastern District of Texas who solicit sales of infringing devices. Upon information and belief, Dell sells infringing devices within the District through its "Dell Direct Stores" located at Stonebriar Centre, 2601 Preston Rd., Frisco, Texas, Vista Ridge, 2401 South Stemmons Fwy., Lewisville, Texas, and Collin Creek Mall, 811 N. Central Expressway, Plano, Texas. Upon information and belief, Dell also sells infringing devices within the District through its Internet site, and advertises infringing devices by direct mail and by newspaper inserts within the District.

3.  Defendant HP is a Delaware corporation with its principal place of business in Palo Alto, California. In May 2002, HP merged with Compaq Computer Corporation ("Compaq"). HP is engaged in the business of making, using, selling and offering to sell computer systems. Upon information and belief, HP sells infringing devices from retail computer stores in the Eastern District

of Texas, including Office Depot, 2545 Judson Road, Longview, Texas and Circuit City, 406 West Loop 281, Longview, Texas. Upon information and belief, HP has employees within the district and sells infringing devices within the district.

4. Defendant Gateway is a Delaware corporation with its principal place of business in Poway, California. Gateway is engaged in the business of making, using, selling and offering to sell computer systems. Upon information and belief, Gateway conducts business in Texas under the names Gateway Companies, Inc., Gateway Country, Inc., and Gateway.com. Upon information and belief, Gateway sells infringing devices within the District through its "Gateway Country" store located at 1300 N. Central Expressway, 601 13th-14th Connect, Plano, Texas. Upon information and belief, Gateway provides classes and training on the use of infringing devices at locations within the District. Upon information and belief, Gateway also sells infringing devices within the District through its Internet site, and advertises infringing devices within the District.

5. This Court has subject matter jurisdiction pursuant to Title 28 U.S.C. § 1331 and § 1338(a). Venue is proper in this District under the provisions of Title 28 U.S.C. §§ 1391(c) and 1400(b), in that the defendants have done business in this District, have committed acts of infringement in this District, and continue to commit acts of infringement in this District, entitling the plaintiff to monetary and injunctive relief.

## FACTUAL BACKGROUND

6. The patented technology was invented by Messrs. Howard Sachs, James Cho and Walter Hollingsworth. In 1982, Mr. Sachs was hired by Fairchild Semiconductor International, Inc. ("Fairchild") to head its Advanced Processor Division ("APD"). Mr. Sachs assembled a team of engineers that included Mr. Cho and Mr. Hollingsworth to accomplish his vision of bringing

mainframe technology to desktop computers by achieving greater speed through advanced microprocessing technology. This team developed a high-speed processor known as the "Clipper" microprocessor, which incorporated many of the inventions of the Patents in Suit.

7. In February 1985, applications were filed by Fairchild for the '275 and '835 patents. In October of that year, an application was filed by Fairchild for the '846 patent. In October 1986, continuation-in-part applications were filed for the Patents in Suit.

8. As Mr. Sachs's team progressed, Fairchild realized that APD would benefit from working with a computer system manufacturer to further test the viability of its technology. Fairchild approached Intergraph Corp., a leading-edge computer company, to assist in this endeavor.

9. Intergraph Corp. was created in 1969 by a small group of engineers from IBM who were responsible for designing the guidance system that helped Apollo 8 orbit the moon. Intergraph Corp. was founded as an engineering consulting firm specializing in advanced digital technology. Intergraph Corp. focused its early efforts applying digital technology to Department of Defense programs. In 1974, Intergraph Corp. developed a general-purpose interactive graphic design system that allowed the user to visualize design intent through graphical interaction with the computer.

10. During the 1970s and 1980s, Intergraph Corp. was on the cutting edge of computer technology. Intergraph Corp. was a pioneer and industry technology leader in both computer graphics terminal design and in stand-alone computer graphics workstation design.

11. Based upon Intergraph Corp.'s reputation as a technology leader, Fairchild and Intergraph Corp. entered into a joint development agreement in September 1985 under which Intergraph Corp. became the primary "Alpha" test site for Fairchild's APD. Intergraph Corp. assisted Fairchild in the validation and manufacture of the first Clipper microprocessor, and

incorporated the Clipper into stand-alone graphics workstations. As an "Alpha" test site, Intergraph Corp. agreed to make workstation prototypes available to Mr. Sachs's team at Fairchild to validate and test the APD-Fairchild microprocessor technology. Fairchild and Intergraph Corp. ultimately began testing a small number of prototypes of the Clipper microprocessor, utilizing the technology disclosed by the patent applications.

12. The Patents In Suit represented a substantial improvement on the state of the art as it then existed. The first Clipper microprocessor permitted Intergraph Corp. to introduce the industry's first computer workstations to reach processing speeds of 5 million instructions per second. A contemporary reviewer observed that "Intergraph [Corp.] seems to have just about everyone beat."

13. Full-scale production of the Clipper microprocessor began in early 1987. In late 1987, Intergraph Corp. purchased APD from Fairchild, and Messrs. Sachs, Cho, and Hollingsworth became full-time employees of Intergraph Corp. Intergraph Corp. assumed APD's ongoing financial obligations and its commitments to suppliers, customers, and approximately 110 employees.

14. Intergraph Corp. also acquired all rights to all APD patent applications and technology, and assumed responsibility for prosecuting those applications. Between February 1990 and February 1992, each of the Patents In Suit was duly and legally issued to Intergraph Corp.

15. Intergraph Corp. spent more than $150 million developing and refining the Clipper technology and the products based thereon. Intergraph Corp. developed multiple generations of Clipper microprocessors. Each generation marketed by Intergraph Corp. advanced the integration, speed, and performance of the previous one. By the end of 1992, Intergraph Corp. manufactured a variety of leading edge computer workstations and servers based on its patented technology.

16. In late 1996, after discovering that many of the products of Intergraph Corp.'s competitors used its patented technology, Intergraph Corp. began notifying competing computer manufacturers ("OEMs") that certain of their products infringed two of the Patents In Suit. In its notice letters, Intergraph Corp. offered to negotiate a license for the OEMs to use the patented technology.

17. Many of the accused OEMs' products employed microprocessors or other components manufactured and sold by Intel Corporation ("Intel"). Intel is the leading supplier of microprocessors in the United States.

18. Upon information and belief, upon receiving Intergraph Corp.'s notification letters, several of the OEMs sought indemnification from Intel. Upon information and belief, Intel discussed Intergraph Corp.'s assertions and the Clipper technology with many of the OEMs.

19. Prior to Intergraph Corp.'s assertion of infringement against the OEMs, Intergraph Corp. and Intel established a business relationship whereby Intergraph Corp. would assist Intel in the definition, validation, and deployment of Intel's microprocessor products. In return, Intel agreed to supply Intergraph Corp. with the resulting high-end microprocessors for Intel's computer workstation and server products.

20. Beginning in the spring of 1997, Intel and Intergraph Corp. met to discuss Intergraph Corp.'s assertion of its patents against Intel's OEM customers. At that time, Intel demanded that Intergraph Corp. grant Intel a worldwide royalty-free license to Intergraph Corp.'s entire patent portfolio. Intel further demanded that such a license expressly permit Intel's OEM customers to use Intergraph Corp.'s patented technology without further compensation. Intergraph Corp. explained

to Intel that the claims against the OEMs concerned the OEMs' sale of computer systems that utilize microprocessors in combination with other system components.

21. Intergraph Corp. sent various letters to the OEMs explaining that the '835 and '846 patents cover computer systems, and do not simply read on Intel's microprocessors. For example, in April 1997, Intergraph Corp. sent Gateway a letter explaining that the patents read on "computer systems, not simply the components that comprise such systems."

22. Based on Intergraph Corp.'s unwillingness to grant the license that was demanded, Intel advised Intergraph Corp. that it was terminating the working relationship between Intel and Intergraph Corp. Intel made it clear to Intergraph Corp. that their relationship could only be reinstated if Intergraph Corp. gave Intel a royalty-free, worldwide license for Intel and its OEM customers.

23. As a result of Intel's actions, on November 17, 1997, Intergraph Corp. filed suit against Intel in the U.S. District Court for the Northern District of Alabama ("Alabama litigation"), asserting a number of claims, including business tort claims and the infringement of Intergraph Corp. patents (including indirect infringement of the Patents In Suit).

24. After filing suit against Intel, Intergraph Corp. continued to offer to negotiate a license with the OEMs for the '835 and '846 patents. In 1999, Intergraph Corp. explained to the OEMs that its enforcement and licensing program would be temporarily suspended while Intergraph Corp. pursued its litigation against Intel. Intergraph Corp. invited the OEMs to monitor the progress of the Intel lawsuit via Intergraph Corp.'s website. In 2001, Intergraph Corp. renewed its offer to the OEMs to negotiate a license to the Clipper patents.

25. After prolonged litigation, and as the result of court-ordered mediation in a separate patent infringement case styled <u>Intergraph Corp., et al. v. Intel Corp.</u>, 2:01CV160-TJW filed in the U.S. District Court for the Eastern District of Texas ("Texas PIC case"), Intel agreed to settle Intergraph Corp.'s Alabama litigation in April 2002.

26. As a result of the mediation in the Texas PIC case, Intel, Intergraph, and Intergraph Corp. executed a comprehensive settlement agreement that expressly excludes any license regarding the OEMs' sale of infringing computer systems. The Texas PIC settlement also specifically preserved Intergraph's right to seek payment for patent licenses from the OEMs, and the right to sue the OEMs under the Patents in Suit.

27. The Texas PIC settlement agreement specifically provides that at Intergraph's request, Intel must notify its OEM customers that:

"...[The] settlement agreement by its terms does not provide an immunity except for Intel products... Therefore, when considering the use of non-Intel products, please note that any resulting combinations may require a separate patent license from Intergraph Corporation."

28. In April 2002, Intergraph Corp. announced the creation of Intergraph Hardware Technologies Company (the plaintiff, "Intergraph"), an operating division with the charter to manage Intergraph Corp.'s patents, copyrights, and trademarks, and to maximize the value of that intellectual property. Intergraph was formed as a wholly-owned subsidiary of Intergraph Corp. and charged with enforcement and licensing of, among other patents, the Patents In Suit. Thereafter, Intergraph Corp. assigned to Intergraph all of the Clipper patents, including the Patents In Suit. Intergraph holds the right to recover damages for past, present and future infringement of the Patents In Suit and the right to seek injunctive relief for infringement of the Patents In Suit.

29. Upon information and belief, Dell is one of the world's largest manufacturers of computer systems. Upon information and belief, Dell offers its customers a full range of computer systems, including desktop computers, notebook computers, and network server products. Upon information and belief, the majority of those computer systems infringes one or more of the Patents In Suit. Examples of infringing computer systems manufactured by Dell include but are not limited to: Optiplex GX1 DCM, Optiplex GX1 MMP, Optiplex GX60 DHM, Optiplex GN+ DCM, Optiplex GX110 DCM, Optiplex GX 110 DCS, Inspiron 265C DP04L, Inspiron 3800 PPX, Latitude CPi PPL, and Latitude CPx PPX.

30. On February 21, 1997, Intergraph Corp. sent a letter to Dell notifying Dell that it infringed the '835 and '846 patents and proposing that Dell and Intergraph Corp. discuss Dell's licensing of Intergraph Corp.'s patents. On March 5, April 22 and July 17, 1997, Intergraph Corp. sent letters to Dell explaining that Intergraph Corp.'s patents read on Dell computer systems. On March 25, 1999, Intergraph Corp. sent a letter to Dell notifying it of Intergraph Corp.'s infringement litigation against Intel, inviting Dell to keep track of such litigation via Intergraph Corp.'s website and explaining that Intergraph Corp.'s enforcement and licensing program would be temporarily delayed while it diverted resources to the Intel litigation. On April 19, 2001, Intergraph Corp. sent a letter to Dell notifying Dell that it infringed, among other Intergraph Corp. patents, the '275, '835 and '846 patents, and proposing that Dell and Intergraph Corp. discuss Dell's obtaining a license under Intergraph Corp.'s patents.

31. Upon information and belief, HP is one of the world's largest manufacturers of computer systems. Upon information and belief, HP offers its customers a full range of computer systems, including desktop computers, notebook computers, and network server products. Upon

information and belief, the majority of those computer systems infringes one or more of the Patents In Suit. Examples of infringing computer systems manufactured by HP include but are not limited to: Pavilion 513w, Pavilion 7867 P3953A, Pavilion 753n P9852A, Pavilion ZT1230 F5552H, Vectra VL VLI8 DT, Vectra VLi8 MT, Vectra VL420 MT, Vectra VE 6/400 Series MT, Vectra XA 5/233 DT, and Kayak XA 6/400slot 1 DT. Examples of infringing computer systems manufactured by Compaq include but are not limited to: Presario 6330US Minitower DA203A, Presario 6330US Minitower DA200A, Armada M700 1456VOL10H, Armada M700 145VOL10H, and Deskpro PD1006. Upon information and belief, following the merger between HP and Compaq, HP is responsible for any infringement of the Patents in Suit by Compaq's products.

32.  On July 17, 1997, Intergraph Corp. sent a letter to Compaq notifying Compaq that it infringed the '835 and '846 patents, explaining that Intergraph Corp.'s patents read on Compaq computer systems and proposing that Compaq and Intergraph Corp. discuss Compaq's licensing of Intergraph Corp.'s patents. On March 25, 1999, Intergraph Corp. sent a letter to Compaq notifying it of Intergraph Corp.'s infringement litigation against Intel, inviting Compaq to keep track of such litigation via Intergraph Corp.'s website and explaining that Intergraph Corp.'s licensing program would be temporarily suspended while Intergraph Corp. diverted resources to the Intel litigation. On August 9, 1999, Intergraph Corp. sent a letter to Compaq acknowledging Compaq's purchase of Tandem Corporation and explaining that Intergraph Corp. had previously put Tandem Corporation on notice with respect to Intergraph Corp.'s patents. On April 19, 2001, Intergraph Corp. sent a letter to Compaq notifying Compaq that it infringed, among other Intergraph Corp. patents, the '275, '835 and '846 patents and proposing that Compaq and Intergraph Corp. discuss Compaq's obtaining a license under Intergraph Corp.'s patents. Upon information and belief, HP

was placed on actual notice of Compaq's infringement of the Patents In Suit on or before the date of HP's merger with Compaq.

33.    Upon information and belief, Gateway is one of the world's largest manufacturers of computer systems. Upon information and belief, Gateway offers its customers a full range of computer systems, including desktop computers, notebook computers, and network server products. Upon information and belief, the majority of those computer systems infringes one or more of the Patents In Suit. Examples of infringing computer systems manufactured by Gateway include but are not limited to: 300S Value GM, Solo 1450 SE, Solo Pro 9300, P5-133 BATC, BC, and LP Mini Tower E-3110.

34.    On February 21, 1997, Intergraph Corp. sent a letter to Gateway notifying Gateway that it infringed the '835 and '846 patents and proposing that Gateway and Intergraph Corp. discuss Gateway's licensing of Intergraph Corp.'s patents. On March 28, 1997, Intergraph Corp. sent a letter to Gateway urging Gateway to contact Intergraph Corp. regarding Gateway's licensing of Intergraph Corp.'s patents. On April 22, 1997, and July 17, 1997, Intergraph Corp. sent letters to Gateway explaining that Intergraph Corp.'s patents read on Gateway computer systems and expressing Intergraph Corp.'s willingness to discuss Gateway's licensing of Intergraph Corp.'s patents. On March 25, 1999, Intergraph Corp. sent a letter to Gateway notifying it of Intergraph Corp.'s infringement litigation against Intel, inviting Gateway to keep track of such litigation via Intergraph Corp.'s website and explaining that Intergraph Corp.'s licensing program would be temporarily delayed while Intergraph Corp. diverted resources to the Intel litigation. On June 3, 1999, Gateway sent a letter to Intergraph Corp. acknowledging, among other things, Gateway's purchase of Advanced Logic Research, a company that Intergraph Corp. had previously put on

notice with respect to Intergraph Corp.'s patents. On April 19, 2001, Intergraph Corp. sent a letter to Gateway notifying Gateway that it infringed, among other Intergraph Corp. patents, the '275, '835 and '846 patents and proposing that Gateway and Intergraph Corp. discuss Gateway's obtaining a license under Intergraph Corp.'s patents.

## **COUNT I - PATENT INFRINGEMENT (U.S. PATENT NO. 4,899,275)**

35. Intergraph restates and realleges the allegations set forth in paragraphs 1 through 34 and incorporates them by reference.

36. On February 6, 1990, United States Patent No. 4,899,275 entitled "Cache-MMU System" was duly and legally issued to Intergraph Corp. and thereafter validly assigned to its subsidiary Intergraph.

37. Defendants have directly, indirectly, contributorily, and/or by inducement infringed claims 37 and 38 of the '275 patent in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f), literally and/or by the doctrine of equivalents, in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

38. Upon information and belief, Defendants HP, Dell and Gateway have knowledge of the '275 patent as a result of Intergraph Corp.'s notifying Defendants of their infringement of that patent.

39. Defendants have willfully infringed the '275 patent in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f).

40. Defendants' infringement of the '275 patent has caused injury to Intergraph, and will continue to do so unless enjoined by this Court, thereby entitling Intergraph to all remedies available under the Patent Laws of the United States, including 35 U.S.C. §§ 281-285.

## COUNT II - PATENT INFRINGEMENT (U.S. PATENT NO. 4,933,835)

41. Intergraph restates and realleges the allegations set forth in the paragraphs 1 through 40 and incorporates them by reference.

42. On June 12, 1990, United States Patent No. 4,933,835 entitled "Apparatus for Maintaining Consistency of a Cache Memory with a Primary Memory" was duly and legally issued to Intergraph Corp. and thereafter validly assigned to its subsidiary Intergraph.

43. Defendants have directly, indirectly, contributorily, and/or by inducement infringed one or more claims of the '835 patent, including but not limited to claims 1-16 and claim 22, in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f), literally and/or by the doctrine of equivalents, in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

44. Upon information and belief, Defendants HP, Dell and Gateway have knowledge of the '835 patent as a result of Intergraph Corp.'s notifying Defendants of their infringement of that patent.

45. Defendants have willfully infringed the '835 patent in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f).

46. Defendants' infringement of the '835 patent has caused injury to Intergraph, and will continue to do so unless enjoined by this Court, thereby entitling Intergraph to all remedies available under the Patent Laws of the United States, including 35 U.S.C. §§ 281-285.

## COUNT III - PATENT INFRINGEMENT (U.S. PATENT NO. 5,091,846)

47. Intergraph restates and realleges the allegations set forth in paragraphs 1 through 46 and incorporates them by reference.

48. On February 25, 1990, United States Patent No. 5,091,846 entitled "Cache Providing Caching/Non-Caching Write-Through and Copyback Modes for Virtual Addresses and Including Bus Snooping to Maintain Coherency" was duly and legally issued to Intergraph Corp. and thereafter validly assigned to its subsidiary Intergraph.

49. Defendants have directly, indirectly, contributorily, and/or by inducement infringed one or more claims of the '846 patent, including but not limited to claims 1-5, claims 9-13 and claim 17, in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f), literally and/or by the doctrine of equivalents, in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

50. Upon information and belief, Defendants HP, Dell and Gateway have knowledge of the '846 patent as a result of Intergraph Corp.'s notifying Defendants of their infringement of that patent.

51. Defendants have willfully infringed the '846 patent in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f).

52. Defendants' infringement of the '846 patent has caused injury to Intergraph, and will continue to do so unless enjoined by this Court, thereby entitling Intergraph to all remedies available under the Patent Laws of the United States, including 35 U.S.C. §§ 281-285.

WHEREFORE Intergraph prays for judgment as follows:

1. A finding that Defendants have directly, indirectly, contributorily and/or by inducement, literally and/or by the doctrine of equivalents, infringed United States Patent No. 4,899,275 in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f);

2. A finding that Defendants have directly, indirectly, contributorily and/or by inducement, literally and/or by the doctrine of equivalents, infringed United States Patent No. 4,933,835 in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f);

3. A finding that Defendants have directly, indirectly, contributorily and/or by inducement, literally and/or by the doctrine of equivalents, infringed United States Patent No. 5,091,846 in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f);

4. A finding that Defendants willfully infringed one or more claims of United States Patent Nos. 4,899,275; 4,933,835; and/or 5,091,846 in violation of 35 U.S.C. §§ 271(a), (b), (c) and/or (f);

5. A permanent injunction enjoining Defendants and their respective agents, servants, officers, directors, employees, joint venturers and all persons acting in concert with them, directly or indirectly, from infringing, inducing others to infringe, or contributing to the infringement of United States Patent Nos. 4,899,275; 4,933,835; and 5,091,846;

6. An order that Defendants account for and pay Intergraph the damages to which it is entitled as a consequence of patent infringement, including enhanced damages pursuant to Title 35 U.S.C. § 284;

7. An order that Intergraph be awarded prejudgment interest and its costs, disbursements and attorneys' fees herein in accordance with Title 35 U.S.C. § 285; and

8. Such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

William H. Manning (MN # 006726X)
Attorney-in-Charge
Matthew L. Woods (MN # 0205278)
Robins, Kaplan, Miller & Ciresi, L.L.P.
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402-2015
Phone: (612) 349-8500
Facsimile: (612) 339-4181
Email: whmanning@rkmc.com

A. James Anderson (GA # 016300)
Robins, Kaplan, Miller & Ciresi, L.L.P.
2600 One Atlanta Plaza
950 East Paces Ferry Road, N.E.
Atlanta, Georgia 30326-1119
Phone: (404) 233-1114

By: _____
Rickey L. Faulkner (TX # 06857095)
S. Calvin Capshaw (TX #03783900)
Brown McCarroll, L.L.P.
1127 Judson Rd., Suite 220 (75601)
P.O. Box 3999
Longview, Texas 75606-3999
Phone: (903) 236-9800
Facsimile: (903) 236-8787
Email: rfaulkner@mailbmc.com

Franklin Jones, Jr. (TX # 00000055)
Jones & Jones, Inc., P.C.
201 West Houston St. (75670)
P.O. Drawer 1249
Marshall, Texas 75671-1249
Phone: (903) 938-4395
Facsimile: (903) 938-3360

Otis W. Carroll (TX # 03895700)
Ireland, Carroll & Kelley, P.C.
6101 South BroadwayAve., Suite 500 (75703)
P.O. Box 7879
Tyler, Texas 75711
Phone: (903) 561-1600
Facsimile: (903) 581-1071

David Vance Lucas (AL # ASB-8050-L53D)
Intergraph Corporation
289 Dunlop Boulevard
Mail Stop IW2008
Huntsville, Alabama 35894
Phone: (256) 730-2032
Facsimile: (256) 730-2247

**Attorneys for Plaintiff,
INTERGRAPH HARDWARE TECHNOLOGIES
COMPANY**