IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INTERGRAPH HARDWARE TECHNOLOGIES COMPANY, | § § § § | |
| Plaintiffs, | | |
| v. | § § § | CIVIL ACTION NO. 2:02-CV-312 (TJW) |
| DELL, INC., ET AL., | § § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Intergraph Hardware Technologies Company's ("Intergraph") Motion to Enforce Judgment against Gateway, Inc. ("Gateway") (Docket Entry No. 560) and related briefing. Intergraph asks the Court to enforce the Order Granting Agreed Motion of Dismissal with Prejudice and Partial Final Judgment Pursuant to Fed. R. Civ. P. 54(b) (Docket Entry #350), as well as the Settlement Agreement between Intergraph and Gateway that was expressly incorporated into the Court's judgment in this case. Defendant Gateway opposes this motion. After carefully considering arguments presented by both parties and the applicable law, the Court hereby GRANTS Intergraph's motion to enforce judgment for the reasons expressed below.

**I.     Background**

Intergraph filed this action for patent infringement against Dell, Inc. ("Dell"), Hewlett-Packard Company ("HP"), and Gateway on December 16, 2002. One of the defenses raised by Gateway was that of patent exhaustion based on Intergraph's license to Intel for sale of Intel products used in Gateway's accused computer systems. *See* Gateway's Motion for Partial

1

Summary Judgment (Docket No. 187). On May 12, 2004, Intergraph and Gateway settled all claims and counterclaims and executed a Settlement Agreement, Release and Patent License Between Intergraph and Gateway ("Agreement"). Under the Agreement, Gateway agreed to make royalty payments to Intergraph based on the sale of its accused products, until each of the patents in suit had expired, on February 25, 2009. The Court expressly incorporated that agreement by reference in its order dated June 3, 2004, dismissing with prejudice any and all claims that Intergraph had asserted against Gateway in this case. (Docket No. 350). On June 9, 2008 the Supreme Court decided *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S.Ct. 2109 (2008) on the doctrine of patent exhaustion. Based on its understanding of the ruling in *Quanta*, defendant Gateway wrote to Intergraph on July 28, 2008, informing it that Gateway was suspending any royalty payments due under the Agreement to Intergraph, and would soon advise Intergraph regarding its position concerning the refund of Gateway's past payments to Intergraph. *See Response*, Ex. 5. Following an exchange of multiple correspondences between Gateway and Intergraph that failed to result in a resolution of the issue, Intergraph filed this motion on October 17, 2008. *See Response*, Ex. 6-9. Gateway opposes the motion, arguing that warranties made by Intergraph in the Agreement have been breached. Gateway argues that under *Quanta*, the licensed Intergraph patents were exhausted at the time the Agreement was entered into by the parties.

## II.     Discussion

A district court may retain jurisdiction over any settlement contract entered into by the parties if the court embodies the settlement contract in its dismissal order. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994). The Fifth Circuit has held that

district courts have the inherent power to recognize, encourage, and enforce settlement agreements reached by the parties. *Bell v. Schexnayder*, 36 F.3d 447, 449-50 (5th Cir. 1994) (citing *CIA Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35-36 (5th Cir.1967)); *accord Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 930 (Fed. Cir. 1994) (noting that a district court need only manifest an inferable intent to retain jurisdiction in its order of dismissal in order to rule on future motion to enforce the settlement). Here, the Court's order of dismissal expressly incorporated the terms of the Agreement by reference, giving the Court jurisdiction to entertain Intergraph's motion.

First, Gateway argues that Fifth Circuit law allows it to invoke *Quanta* to reargue its patent exhaustion defense. It contends that the law of this Circuit, *Kasper Wire Works, Inc. v. Leco Engineering and Machine, Inc.*, 575 F.2d 530 (5th Cir. 1978) requires that the previous judgment in this case have no preclusive effect on the motion in issue. It argues that because the Court never rendered a decision on the issue of patent exhaustion, the settlement it entered into with Intergraph, and the Court's order dismissing Intergraph's claims, cannot bar Gateway from raising its patent exhaustion defense once more. Gateway misreads *Kasper*. The Fifth Circuit in that case held that a consent judgment dismissing a prior suit brought for a declaratory judgment of patent invalidity and non-infringement did not bar the defendants from contesting the validity of the plaintiff's patent in a later suit. *Id*. at 540. In contrast, Intergraph simply seeks to enforce a judgment entered in this very case. Further, it does not seek to avoid relitigation of patent validity or infringement issues here. The Court therefore finds that holding in *Kasper* does not apply to the motion at issue. Contrary to Gateway's assertions, the Fifth Circuit has repeatedly held that courts should summarily enforce settlement agreements. *See, e.g.*, *Ho v. Martin*

*Marietta Corp.*, 845 F.2d 545, 548 (5th Cir. 1988) ("Once the district court enters the settlement as a judicial consent decree ending the lawsuit, the settlement takes on the nature of a judgment. The judicial decree, which gives the settlement its legal force, cannot be collaterally attacked or altered."); *Cia Anon Venezolana De Navegacion*, 374 F.2d at 35 ("Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced."). The Court will not allow Gateway to relitigate issues that it has previously raised in this case and abandoned in favor of a settlement agreed into with Intergraph.

Second, Gateway phrases its patent exhaustion argument as an alleged breach by Intergraph of warranty provisions in the Agreement, arguing that the Court should enforce Intergraph's obligations under the Agreement. Specifically, it points on express representations made by Intergraph in Sections 9(a) and 9(c) of the agreement, under which Intergraph represented that it had the right and authority to grant the patent rights and licenses to Gateway that it did under the Agreement. Gateway argues that these are ongoing warranties and under *Quanta*, Intergraph has now breached those warranties. Alternatively, Gateway argues that even if those warranties are not ongoing, *Quanta* is not new law, and the warranties were breached as of the effective date of the Agreement. Although creative, Gateway's arguments are not persuasive. It is undisputed that Intergraph owns the patents at issue. It is also undisputed that Intergraph has rights in these patents that it can license. In fact, Gateway's exhaustion arguments are very much based on the validity of Intergraph's license agreement with Intel. The issue in dispute is whether the Agreement provides ongoing warranties to Gateway on Intergraph's right to grant a license to Gateway, subsequent to the Intel license. Gateway points

to Sections 6(b), 7(d), 9(d), 10(a), 10(p) and 10(r) of the Agreement to argue that Intergraph has ongoing obligations under the Agreement. Intergraph responds that the warranties expressed in Sections 9(a) and 9(c) of the Agreement relate to the conditions as they stood as of the effective date of the Agreement. Delaware law applies to the Agreement at issue. Under Delaware law, a court must determine the intent of the parties from the language of the contract, and where no ambiguity exists in the contract language, such language should be interpreted according to the ordinary and usual meaning of its terms. *Mars, Inc. v. Coin Acceptors, Inc*., 527 F.3d 1359, 1370 (Fed. Cir. 2008) (citing *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del.2003)). The Court finds no ambiguity in the language used in Sections 9(a) and 9(c) of the Agreement. Section 9(a) states: "IHTC represents and warrants to GATEWAY that it has the right to grant the rights and license granted herein . . . ." Similarly, Section 9(c) states: "Each of the PARTIES hereto warrants and represents that it has the authority to dispose of and/or grant rights . . . ." Section 9(c) further states: ". . . and that such claims, suits, causes of action, rights and/or interests, in their entirety or any portion thereof, have not been assigned, transferred, sold or otherwise encumbered." The Court fails to see how these provisions can be read to grant future warranties. In contrast, the sections of the Agreement that Gateway points to make it just as clear that those provisions do relate to the future. *See, e.g.*, Agreement, §10(p)) ("This Agreement shall be binding upon and shall inure to the benefit of . . . ."). Gateway argues that the Agreement needs to be construed in its entirely, giving effect to all its provisions. *See* Sur-reply, p. 4 (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co*., 498 A.2d 1108, 1113 (Del. 1985)). But even when read as a whole, the Agreement grants significant latitude to Intergraph to do as it pleases with its patents without breaching the Agreement. *See, e.g.*, Agreement,
5

§§10(a); 10(c). As Intergraph points out, Section 9(d) expressly disclaims any warranty as to the validity, enforceability or scope of any of the patents. In light of these provisions, it is difficult for the Court to read a representation by Intergraph of a future warranty made in Sections 9(a) and 9(c) relating to Intergraph's ability to grant the rights and licenses that Intergraph granted in the Agreement.

The Court also rejects Gateway's argument that *Quanta* should not be considered new law in this context. While the Supreme Court did cite *Univis*[1] at governing case law in *Quanta*,[2] the Federal Circuit had long interpreted the exhaustion doctrine as applying only where the sale or license of the patented invention was an unconditional one. *See Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 703 (Fed. Cir. 1992) ("The enforceability of restrictions on the use of patented goods derives from the patent grant, which is in classical terms of property"); *see also B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) ("This exhaustion doctrine, however, does not apply to an expressly conditional sale or license."). In fact, just prior to the Supreme Court's *Quanta* decision, the Federal Circuit had reiterated its rule, holding in that same case that the agreement between plaintiff LG Electronics, Inc. and Intel at issue, which Gateway argues is very similar to the one in this case, did not exhaust the patent owner's rights against defendant computer system manufacturers who had bought Intel's licensed products. *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1370 (Fed. Cir. 2006). Therefore, the Court is not convinced by Gateway's arguments here that under case law existing at the time of the Agreement, Intergraph clearly did not have the "right to grant the rights and licenses granted" in the Agreement. Intergraph's license to Intel was indeed

---

[1] *United States v. Univis Lens Co.*, 316 U.S. 241, 250 (1942).
[2] *Quanta*, 128 S.Ct. at 2119.

restrictive, expressly disclaiming the grant of any rights to Intel's customers. *See* Response, Ex. 1, § 4. In fact, Intergraph's license to Intel required Intel to send letters to customers such as Gateway, expressly disclaiming to these customers, any immunity from Intergraph's patent enforcement based simply on Intel's sale of its products. *See id*. at § 5 and Ex. A. Therefore, Intergraph did indeed have patent rights to grant to Gateway at the time of the Agreement and Gateway sought license to those rights, fully aware of its patent exhaustion defense as it existed at that time.[3] As per the agreement, Gateway's payments and royalty calculations were based in part upon consideration of "the issues raised by the Action." *See* Agreement, at § 2. Gateway cannot now argue that Intergraph's warranty under Sections 9(a) and 9(c) was breached as of the effective date of the Agreement.

The Court finds no reason to deny enforcement of Gateway's obligations under the Agreement entered into by the parties. Therefore, the court GRANTS Intergraph's motion. It is ORDERED that Gateway comply with the Court's Order Granting Agreed Motion of Dismissal with Prejudice and Partial Final Judgment Pursuant (Dkt. No. 350), and the terms of the Agreement, by making the royalty payments required by the Agreement to Intergraph. Gateway must provide an accounting of all units sold since it ceased making royalty payments under the Agreement and make payments for those units along with the interest due per the terms of the Agreement.

Intergraph further moves the Court to declare this matter exceptional and award attorney fees and costs incurred in the enforcement of the settlement agreement. When considering a

---

[3] As Intergraph points out, Gateway based its patent exhaustion defense in significant part, on the district court's holding in the *Quanta*. *See* Gateway's Motion for Partial Summary Judgment (Docket No. 187) (citing *LG Electronics, Inc. v. Asustek Computer, Inc.*, 248 F. Supp. 2d 912 (N.D. Cal. 2003). The Supreme Court upheld the district court's finding of patent exhaustion in its decision. *Quanta*, 128 S.Ct. 2109.

7

request for an award of attorney fees under 35 U.S.C. § 285, the Federal Circuit has required that there be clear and convincing evidence that the case is "exceptional." *Interspiro*, 18 F.3d at 933. Although the Court rejects the arguments made by Gateway in opposition of this motion, it does not deem this case appropriate for imposing attorney fees and costs. Intergraph's request for award of costs is DENIED.

It is so ORDERED.

SIGNED this 16th day of January, 2009.

_T. John Ward_
T. JOHN WARD
UNITED STATES DISTRICT JUDGE